IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**JOAN F. ROISLAND**,

       Plaintiff,

  v.

**FLAGSTAR BANK, FSB, NORTHWEST
TRUSTEE SERVICES, INC., MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, INC.,** and **FEDERAL HOME
LOAN MORTGAGE CORPORATION**,

       Defendants.

No. 3:13-cv-0588-MO

AMENDED OPINION AND ORDER

**MOSMAN, J.**,

     Plaintiff Joan Roisland filed suit in Multnomah County Court in November 2012, seeking

to unwind the nonjudicial foreclosure of her residence and to recover for other damages.

Defendants removed to this court under 28 U.S.C. § 1441 and moved to dismiss [11, 15] the

complaint under Federal Rule of Civil Procedure 12(b)(6).  I have considered Defendants'

motions and the evidence appended to Ms. Roisland's complaint and submitted by Defendants.

As discussed further below, I dismiss Ms. Roisland's first, second, third, fourth, fifth and seventh

claims with prejudice.  I dismiss Ms. Roisland's sixth claim with prejudice as to Defendants

MERS and Freddie Mac and without prejudice as to Defendant Flagstar.[1]

## BACKGROUND

Ms. Roisland alleges that she first purchased the property at issue "over [twenty] years

ago" and that she executed the deed of trust at issue in this case in 2009.  (Compl. [1-1] ¶ 1–2.)

Ms. Roisland does not dispute that she went into default on the loan in 2011.  The property was

nonjudicially foreclosed upon in 2012.  The property was purchased at the trustee's sale by

Federal Home Loan Mortgage Corporation , and Ms. Roisland remains in possession.  (Compl.

[1-1] ¶ 1, 7.)  Ms. Roisland brought suit in Multnomah County Court against Flagstar Bank, FSB

("Flagstar"); Northwest Trustee Services, Inc.; ("Northwest"); Mortgage Electronic Registration

Systems, Inc. ("MERS"); and "Federal Home Loan Mortgage Corporation" ("Freddie Mac").

Her suit challenges the nonjudicial foreclosure proceedings as improper and seeks to unwind the

trustee's sale.  (Compl. [1-1] at 8.)

The gravamen of the complaint is that Defendants "knew or should have known that the

preconditions for initiating a non-judicial foreclosure of Plaintiff's real property were not met . . .

the recorded assignment [from MERS] to Flagstar was false . . . [and] that MERS did not have

authority to act on behalf of the beneficiary." (Compl. [1-1] ¶ 8.)

The complaint was filed on November 27, 2012, but Ms. Roisland did not serve any of

the defendants until March 8, 2013.  Only Defendant MERS was served on that date.

---

[1] Defendant Northwest filed a motion to dismiss [15]. Subsequently, I entered a stipulated judgment [23] between Plaintiff and Defendant Northwest.  Defendant Northwest agreed to be bound by my ultimate judgment on the validity of the deed of trust or notices issued by Northwest (as trustee) in connection with the nonjudicial foreclosure.  Plaintiff's first, second, fifth, sixth, and seventh claims were dismissed against Defendant Northwest pursuant to this judgment [23].

Defendants MERS and Flagstar then removed the suit to this court under 28 U.S.C. § 1441.  No other Defendant has been served.

In Oregon, a loan secured by the borrower's real property is most often secured using a deed of trust, which functions as a mortgage.  *See Brandrup v. ReconTrust Co., N.A.*, 353 Or. 668, 675–77, 303 P.3d 301, 305–06 (2013).  In this case, the deed of trust secures a promissory note embodying Ms. Roisland's obligation to repay the loan for $110,000 from First Priority Financial, Inc., the lender.[2]  (Def.'s Mem. [12] Ex. A.)  The promissory note bears an endorsement from First Priority to Defendant Flagstar.  (Def.'s Mem. [12] Ex. A.)  The endorsement shows that Defendant Flagstar is the holder of the promissory note.  As noted, the promissory note is secured by the deed of trust granted by Ms. Roisland.

The deed of trust named Defendant MERS as beneficiary and Fidelity National Title[3] as trustee.  (Compl. [1-1] ¶ 2 & Ex. 1 at 1.)  Ms. Roisland submitted the deed of trust along with her complaint.  (Compl. [1-1] Ex. 1.)  The deed of trust, which was recorded on March 26, 2009, includes a notation directing return of the deed to "Flagstar Bank" after recording.  (Compl. [1-1] Ex. 1 at 1). Ms. Roisland alleges that Defendant Flagstar "serviced Plaintiff's loan secured through Plaintiff's deed of trust" and that she made all loan payments to Flagstar.  (Compl. [1-1] ¶¶ 2, 5.)  Defendant Flagstar argues that because this notation already appeared on the deed of trust when it was recorded on March 26, 2009, it is clear that at that time Flagstar "would immediately acquire" the promissory note from First Priority.  (Def.'s Mem. [12] at 2–3.)  Plaintiff has pointed to no alternative explanation for this notation on the deed of trust, and my examination of the documents has revealed none.

---

[2] First Priority is not a party to this suit.

[3] Fidelity National Title is not a party to this suit.

Ms. Roisland does not dispute that she defaulted on the promissory note in 2011.

Defendants argue that at that time Defendant Flagstar, as holder of the note, was already entitled

to enforce the deed of trust notwithstanding that Defendant MERS was nominally the beneficiary

of the deed of trust.[4]  (Def.'s Mem. [12] at 3.)

On December 29, 2011, MERS assigned its nominal beneficial interest in the deed of

trust to Defendant Flagstar, which then appointed Defendant Northwest as successor trustee.

Both the assignment and appointment were recorded on January 11, 2012. (Compl. [1-1] Ex. 2;

Def.'s Mem. [12] Ex. B.)  Defendant Northwest recorded a Notice of Default and Election to Sell

on the same day and held a trustee's sale on May 18, 2012.  (Compl. [1-1] ¶ 7 & Ex. 3, 4.)  The

property was purchased by Defendant Freddie Mac. (Compl. [1-1] ¶ 7.)  The Trustee's Deed was

recorded on May 23, 2012.  (Compl. [1-1] Ex. 4.)

The complaint includes some allegations that negotiations had been or were occurring

after Ms. Roisland's default and prior to the foreclosure.  (Compl. [1-1] ¶ 7.)  Ms. Roisland

alleges:

> From March 2012 to Mid-May 2012, and as late as the morning of May 18, 2012,
> Flagstar negotiated with Plaintiff's authorized representatives to postpone or
> rescind the foreclosure sale, suggested the prospects of postponement were
> encouraging, and yet took no action to stop the sale or communicate further with
> Plaintiff or her representatives.

(Compl. [1-1] ¶ 7.)  Ms. Roisland does not, however, contend that she ever actually entered into

a forbearance agreement with Defendant Flagstar.

Ms. Roisland asserts seven claims for relief: (1) unlawful foreclosure under Or. Rev. Stat.

§ 86.735; (2) violation of the Oregon Unlawful Trade and Business Practices Act ("UTPA")

---

[4] As discussed further below, until June 2013 the Supreme Court of Oregon had yet to decide whether the Oregon Trust Deed Act allowed MERS to serve as beneficiary; some state and federal courts in this district had previously held that it did.  *C.f. Sovereign v. Deutsche Bank*, 856 F. Supp. 2d 1203, 1212 (D. Or. 2012); *Beyer v. Bank of America et. al.*, 800 F. Supp. 2d 1157, 1161–62 (D. Or. 2011); *Somers v. Deutsche Bank Nat'l Trust Co.*, No. 11020133, slip op. at 4 (Or. Cir. Ct. Jul. 6, 2011); *but see James v. ReconTrust Co.*, 845 F. Supp. 2d 1145, 1155–59 (D. Or. 2012).

under Or. Rev. Stat. § 646.607–08; (3) declaratory judgment as to the validity of the foreclosure;

(4) declaratory judgment as to the validity of the deed of trust and promissory note and the

interests in the real property; (5) breach of contract; (6) violation of the Oregon Unlawful Debt

Collection Practices Act ("UDCPA"), Or. Rev. Stat. § 646.639; and (7) to quiet title. (Compl. [1-

1] ¶¶ 9–33.)

On May 10, 2013, Defendants Flagstar, MERS, and Freddie Mac filed a motion to

dismiss [11] under Federal Rule of Civil Procedure 12(b)(6).  On June 6, 2013, the Oregon

Supreme Court issued two opinions pertinent to Plaintiff's claim.  *See Brandrup*, 353 Or. 668,

303 P.3d 301; *Niday v. GMAC Mortgage, LLC*, 353 Or. 648, 302 P.3d 444 (2013).  My

construction of these opinions and their application to the facts of this case guides my rulings on

Defendants' motion to dismiss [11].

## LEGAL STANDARDS

When reviewing a motion to dismiss, the court must "accept all factual allegations in the

complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

*Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).  A court need not accept legal

conclusions as true because "[t]hreadbare recitals of the elements of a cause of action, supported

by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In

considering a motion to dismiss, a court may take notice of documents appended to a pleading or

on which a pleading necessarily relies without converting the motion to one for summary

judgment.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil

Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A pleading that offers only "labels and conclusions" or "'naked assertion[s]' devoid of 'further factual enhancement'" will not suffice. *Id*. (quoting *Twombly*, 550 U.S. at 555, 557).  While the plaintiff does not need to make detailed factual allegations at the pleading stage, the allegations must be sufficiently specific to give the defendant "fair notice" of the claim and the grounds on which it rests.  *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007) (per curiam) (citing *Twombly*, 550 U.S. at 555).

Federal Rule of Civil Procedure 81(c) provides that these standards apply to suits removed from state court under 28 U.S.C. § 1441 just as they do to complaints originally filed in federal court.  Ms. Roisland has not moved for leave to amend or submitted a proposed amended complaint, and thus I have considered the sufficiency of her pleading in the form originally filed in Multnomah County.   To the extent I dismiss a claim solely for failure to satisfy these standards I dismiss without prejudice; Ms. Roisland is free to file an amended complaint that satisfies federal pleading standards.

## DISCUSSION

### I.    Consideration of Extrinsic Evidence

Ms. Roisland attaches several pertinent documents to the complaint: the deed of trust, the recorded assignment of the beneficial interest therein by Defendant MERS to Defendant Flagstar, the Notice of Default and Election to Sell filed by Defendant Northwest, and the trustee's deed. (Compl. [1-1] Exs. 1–4.)  Defendants submit a copy of the promissory note signed by Ms. Roisland and the Appointment of Successor Trustee recorded on January 11, 2012. (Def.'s Mem. [12] Exs. A & B.)  Because the pleadings and the parties' arguments rely upon evidence adduced from these documents, I must determine whether I may consider this evidence without converting Defendants' motion to dismiss into a motion for summary judgment under Federal Rule of Civil Procedure 12(d).

The Ninth Circuit recognized in *Lee v. City of Los Angeles* that a court may consider documents submitted as part of the complaint without so converting a motion. 250 F.3d at 688. It is also proper for a court to consider additional documents if their authenticity is not contested and the complaint "necessarily relies on them." *Id.* (internal quotations omitted). Ms. Roisland alleges that she signed a promissory note and deed of trust on March 20, 2009 naming Defendant MERS as beneficiary. All claims are premised on the existence of the promissory note and deed of trust and on the foreclosure proceedings evidenced by Defendant Northwest's appointment as trustee, the Notice of Default, and the trustee's deed. Ms. Roisland's complaint relies upon the existence of these documents, including those submitted by Defendants. Ms. Roisland does not dispute the submitted documents' authenticity. Consequently, I consider it proper to rely on these documents and have done so.

## II.    Validity of the Trustee's Sale

The Supreme Court of Oregon held in *Brandrup* that for purposes of the Oregon Trust Deed Act ("OTDA") Defendant MERS cannot serve as nominee beneficiary of a deed of trust. The court held that "beneficiary," as used in the OTDA, means the lender or subsequent holders of the promissory note secured by the deed of trust, as the lender (or successor) is "the person for whose benefit a trust deed is given." *Brandrup*, 353 Or. at 683–88, 303 P.3d at 309–11 (quoting Or. Rev. Stat. § 86.705(2)); *see also Niday*, 353 Or. at 657–60, 302 P.3d at 449–51.

The core of most of Ms. Roisland's challenges to the foreclosure proceedings is Defendant MERS's involvement in the execution and enforcement of the deed of trust. Although the complaint is vague on this point,[5] Ms. Roisland's arguments in opposition to the

---

[5] Ms. Roisland alleges that the defendants failed "to record all assignments of Plaintiff's Trust Deed or promissory note prior to instituting disclosure," that defendants filed "a false assignment of Plaintiff's Trust Deed in support of their foreclosure action," that defendants initiated and conducted a non-judicial foreclosure "without proper authority," and that defendants assigned the deed of trust subsequent to instituting foreclosure proceedings "while

motion to dismiss indicate that the underlying basis for her challenge to the non-judicial

foreclosure is that Defendant MERS "never had authority to transfer beneficial interest in a trust

deed to Flagstar, who later assigned to a foreclosing trustee." (Pl.'s Resp. [22] at 3.)

> **A.**    ***As Holder of the Promissory Note, Defendant Flagstar Held the Beneficial Interest in the Deed of Trust***

The facts apparent from the documents filed with Multnomah County in connection with

the deed of trust and nonjudicial foreclosure proceedings indicate that the nonjudicial foreclosure

proceeding in this case complied with Oregon law notwithstanding MERS's involvement.

The deed of trust at issue in this case indicates that the lender was First Priority, the

trustee was Fidelity National Title, and that Defendant MERS held the beneficial interest "as

nominee for Lender and Lender's successors and assigns."  (Compl. [1-1] Ex. 1 at 1.)  *Brandrup*

and *Niday* establish that MERS cannot legally hold this beneficial interest, however.  Rather, it is

clear under these decisions that the lender or its successor-in-interest is holder of the beneficial

interest in a deed of trust.[6]  Thus, under the deed of trust here, the holder of the beneficial interest

was First Priority Financial, the lender, notwithstanding that the deed of trust said that MERS

was the beneficiary "as nominee."[7]

---

proceeding with foreclosure proceedings under an invalid [Notice of Default]."  (Compl. [1-1] ¶ 10.)  No specifics are alleged.  Consequently, I would dismiss Ms. Roisland's first, third, fourth, and seventh claims for failure to state a claim on which relief could be granted even if I did not dismiss them for the reasons articulated below.

[6] The *Niday* court concluded:

> [R]egardless of MERS' designation as [beneficiary] in the trust deed, and regardless of wording in the trust deed that purports to grant MERS various "interests" belonging to the lender "if necessary to comply with law or custom," MERS cannot be the beneficiary of the trust deed in this case. Rather, insofar as the trust deed "secures to Lender" the "repayment of the Loan" and other covenants relating to that obligation, the lender [ ] was the original "beneficiary" of the trust deed for purposes of the OTDA.

353 Or. at 660, 302 P.3d at 451.  In this case, the lender's interests were conveyed to a successor-in-interest when the lender endorsed the promissory note over to Defendant Flagstar.

[7] In contrast with the facts at issue in *Niday*, in this case it was the holder of the note that instituted foreclosure by appointing a successor trustee, rather than MERS itself appointing a successor trustee. *See Niday*, 353 Or. at 659–60, 302 P.3d at 450–51.  Thus, in this case whether MERS could hold the beneficial interest as a properly-appointed

In *Brandrup*, the Supreme Court of Oregon reaffirmed the longstanding principle that when a promissory note changes hands the beneficial interest in a deed of trust securing that promissory note "follows the promissory note that it secures" by operation of law. 353 Or. at 694, 303 P.3d at 315. In this case, the promissory note bears an endorsement from the original lender, First Priority, to Defendant Flagstar. This endorsement made Defendant Flagstar holder of the promissory note.[8] By virtue of that status, Defendant Flagstar also became the holder of the beneficial interest in the deed of trust securing that note by operation of law. *See Niday*, 353 Or. at 660–62, 302 P.3d at 451–52.

The endorsement apparent on the face of the promissory note shows that after its execution by Ms. Roisland on March 20, 2009, Defendant Flagstar became the holder of the note. As such, Flagstar became the holder of the beneficial interest in the deed of trust securing that note by operation of law. *See Niday*, 353 Or. at 660–62, 302 P.3d at 451–52. As holder of the beneficial interest, Flagstar itself could appoint a successor trustee to institute non-judicial foreclosure proceedings under the OTDA. Although an assignment of the beneficial interest in the deed of trust from Defendant MERS (the "nominee" holder) to Defendant Flagstar was made and recorded with the county prior to the trustee's sale, this assignment can have had no effect, because as a matter of law MERS could not hold the beneficial interest in the deed of trust. An assignment of an interest by an entity that does not hold that interest to the entity that does hold that interest can be regarded as nothing more than a legal nullity.

---

*agent* of the true beneficiary is not at issue. *See Brandrup*, 353 Or. at 701–10, 303 P.3d at 319–23. Consequently, I need not consider whether MERS is an agent of the holder of the note in this case.

[8] Although the exact date on which Defendant Flagstar became the holder of the promissory note is not asserted by Defendants, based on the relevant documents I find that Defendant Flagstar become the holder either between March 19 and March 26, 2009, or immediately thereafter. In either case, Defendant Flagstar was the holder by January 2012, when the nonjudicial foreclosure proceedings were initiated. I have found no other reason why the deed of trust (which was security for the promissory note) would have come into its possession after recording.

Because Defendant Flagstar held the beneficial interest in the deed of trust by virtue of its position as holder of the promissory note, its appointment of Defendant Northwest as successor trustee was proper under Oregon law.

**B.    Brandrup *and* Niday *Reaffirmed that Such a Transfer of the Beneficial Interest Is Not An "Assignment" that Need Be Recorded***

Ms. Roisland argues that the nonjudicial foreclosure violated the OTDA even if Flagstar held the beneficial interest in the deed of trust when it appointed Defendant Northwest as successor trustee because the assignment of the promissory note by First Priority to Defendant Flagstar had not been recorded. Oregon law provides that non-judicial foreclosure cannot be instituted to enforce a deed of trust unless "[t]he trust deed, any assignments of the trust deed by the trustee or the beneficiary and any appointment of a successor trustee are recorded in the mortgage records in the counties in which the property described in the deed is situated." Or. Rev. Stat. § 86.735(1). Ms. Roisland argues that this statute renders the foreclosure on her property improper.

The Supreme Court of Oregon, however, established that informal transfer of the beneficial interest in a deed of trust, such as that which occurs by operation of law when a promissory note is endorsed over to a new holder, is not an assignment that must be recorded to satisfy Or. Rev. Stat. § 86.735(1). The court reasoned that § 86.735 "assumes the existence of an assignment in recordable form" and found that "the transfer of a promissory note cannot serve that function. Because a promissory note generally contains no description of real property and does not transfer, encumber, or otherwise affect the title to real property, it cannot be recorded." *Brandrup*, 353 Or. at 696, 303 P.3d at 316. This principle was reaffirmed in *Niday*, in which the court held that where the trust deed's beneficiary, the original lender, had "sold the promissory note associated with the trust deed, that transaction does not qualify as an 'assignment[ ] of the

10 – AMENDED OPINION AND ORDER

trust deed' for purposes of the recording requirement of ORS 86.735(1)." *Niday*, 353 Or. at 660–

61, 302 P.3d at 451.  Consequently, Defendant Flagstar's failure to record the transfer of the

deed of trust securing the promissory note is not grounds for invalidating the non-judicial

foreclosure under Or. Rev. Stat. § 86.735(1).

* * *

Ms. Roisland does not allege any other assignment of the trust deed that was required by

Or. Rev. Stat. § 86.735 to be recorded in order for the trustee to institute nonjudicial foreclosure

proceedings.  (Pl.'s Resp. [22] at 3–4.)  As such, her complaint alleges no violation of § 86.735

that could render the trustee's sale invalid.  To the extent that Ms. Roisland seeks to allege any

other theory by which the OTDA was violated in the course of the foreclosure proceedings, her

complaint fails to state a claim on which relief can be granted under *Iqbal*.  Consequently, Ms.

Roisland's first claim for relief is dismissed.  Because Ms. Roisland has alleged no improprieties

in the nonjudicial foreclosure proceedings that could invalidate the trustee's sale, her third and

fourth claims seeking declaratory judgment of the validity of the sale and the rights and

obligations of the parties and her seventh claim to quiet title are also dismissed.

### III.    Or. Rev. Stat. § 86.770(1) Bars Post Hoc Challenge to a Trustee's Sale

Defendants direct the court to Or. Rev. Stat. § 86.770(1), which provides that "[i]f, under

ORS 86.705 to 86.795, a trustee sells property covered by a trust deed, the trustee's sale

forecloses and terminates the interest in the property that belongs to a person to which notice of

the sale was given."  This court has closely analyzed Or. Rev. Stat. § 86.770(1) and its

interaction with the OTDA's overarching scheme for nonjudicial foreclosures in *Mikityuk v.*

*Nw.Tr. Servs., Inc.*, --- F. Supp. 2d ---, No. 12-1518, 2013 WL 3388536 (D. Or. June 26, 2013).

The statute provides that an interest is "foreclosed and terminated" if the trustee's sale occurred

"under ORS 86.705 to 86.795."  The *Mikityuk* court considered whether a trustee's sale can be

said to have occurred "under ORS 86.705 to 86.795" where the plaintiff points to errors in the nonjudicial foreclosure proceedings, but raises these errors only after the sale has been completed and the trustee's deed recorded.  *Id.* at *3–5 (quoting Or. Rev. Stat. § 86.770(1)).

The OTDA gives the trustee—who holds legal title to the deed of trust—"the power to sell property securing an obligation under a trust deed in the event of default . . . subject to strict statutory rules designed to protect the grantor." *Staffordshire Invs., Inc. v. Cal-Western Reconveyance Corp.*, 209 Or. App. 528, 542, 149 P.3d 150, 157 (2006).  The OTDA has dual purposes: (1) to "provide 'creditors with a quick and efficient remedy against a defaulting grantor;'" and (2) to "'protect the grantor against the unauthorized loss of its property and to give the grantor sufficient opportunity to cure any default.'" *Mikityuk*, 2013 WL 3388536 at *6 (quoting *Staffordshire*, 209 Or. App. at 542, 149 P.3d at 157–58).  The OTDA provides that the recitals in a trustee's deed that has been recorded after a properly noticed nonjudicial foreclosure sale are "prima facie evidence in any court of the truth of the matters set forth therein" and are "conclusive in favor of a purchaser for value in good faith relying upon them." *See id.*  These presumptions have been described as an "explicit 'statutory presumption of finality.'" *Mikityuk*, 2013 WL 3388536 at *6 (quoting *Staffordshire*, 209 Or. App. at 543).  This presumption of finality arises, however, only after a grantor is given ample notice of an impending sale by the required notices such that any improprieties may be raised before the trustee's sale takes place. *See id.* at *7 ("Presumably, the legislature believed anyone choosing to challenge a non-judicial foreclosure should raise those challenges before the sale.")

The *Mikityuk* court concluded that the OTDA's combination of detailed notice requirements and the statutory presumption of finality indicate that "[o]ne who waits until after the trustee's sale risks having one's property interest 'foreclosed and terminated.'" *Id.* (quoting

Or. Rev. Stat. § 86.770(1)).  Having noted that other OTDA provisions support the conclusion

that a recorded trustee's deed is to be regarded as final, the court concluded:

> [T]he text and context of the OTDA demonstrate that the legislature weighed
> efficiency, certainty, and finality against the threat of wrongful foreclosure and,
> after including notice provisions intended to protect the grantor from wrongful
> foreclosure, came to the conclusion that the need for certainty and finality
> trumped the risks of wrongful foreclosure.

*Id.*

I find the *Mikityuk* court's reasoning persuasive and its conclusion sound.  The grantor's

remedy for OTDA violations in connection with the enforcement of a deed of trust is to raise any

defects in the trustee's power of sale upon receipt of notice, prior to the trustee's sale and the

recordation of the trustee's deed.

In this case, as was the case in *Mikityuk*, Ms. Roisland does not dispute that she was in

default on the loan at the time of the trustee's sale and that she received the required notice.  Any

claim to challenge the propriety of the trustee's sale could have been brought upon receipt of the

statutorily required notices.  Consequently, even if I had not found that the trustee's sale was

proper due to Defendant Flagstar's equitable interest in the deed of trust, I would bar this post

hoc challenge to the trustee's sale under Or. Rev. Stat. § 86.770(1).  Ms. Roisland's interest in

the property was "foreclosed and terminated" under Or. Rev. Stat. § 86.770(1) by the trustee's

sale.

**IV.    Breach of Contract Claim**

Ms. Roisland also brings a claim for breach of contract.  She alleges that "Defendants

failed to deal with Plaintiff in good faith, acted without proper authority, and foreclosed upon the

Plaintiff's real property in violation of Oregon law and by using false certifications."  (Compl.

[1-1] Ex. 1 ¶ 24.)  She alleges that these actions "breached the [ ] promissory note and Trust

Deed agreements as well as the implied covenant of good faith and fair dealing for each."  *Id.*

At the outset, I note that this claim must be dismissed as to all Defendants who have never been in a contractual relationship with Ms. Roisland. Ms. Roisland alleges no contractual relationship with Defendants MERS and Freddie Mac. Consequently, I dismiss with prejudice as to these defendants. The alleged contracts—the promissory note and deed of trust—were entered into with the original lender, First Priority. Defendant Flagstar became a party as First Priority's successor-in-interest. In the same way, and although it is not specifically alleged, it appears on the face of the deed of trust that Defendant Northwest would have become a party to the deed of trust contract upon appointment as successor trustee. *See Brandrup*, 353 Or. at 681, 303 P.3d at 308 (discussing the "traditional three-party trust deed arrangement—debtor/grantor, trustee, and lender-beneficiary").

Defendants argue that all claims in this suit should be dismissed for Ms. Roisland's failure to provide notice and opportunity to cure as required under the deed of trust. The deed of trust provides:

> Neither Borrower nor Lender may commence . . . any judicial action . . . that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party . . . of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.

(Complaint [1-1] Ex. 1 ¶ 20.) It cannot be denied that this breach of contract claim "alleges that [Defendants Flagstar] breached [a] provision of, or [a] duty owed by reason of" the deed of trust.

Ms. Roisland does not dispute that she did not give notice and opportunity to cure before filing this suit to challenge enforcement of the deed of trust through nonjudicial foreclosure proceedings. Rather, she argues that her obligation under the notice and cure provision would run only to the original lender, First Priority, who was the other party to the contract. (Pl.'s Resp. [22] at 4.) Putting aside the internal inconsistency of an argument that no defendant is

entitled to rights under the contract while asserting a claim against each for breach of that same

contract, I find that Defendant Flagstar, as successor-in-interest to the original "Lender" under

the contract, succeeds to its rights and obligations.[9]  Consequently, Ms. Roisland did owe an

obligation to provide notice and opportunity to cure to Defendant Flagstar.

Ms. Roisland does not dispute that she did not satisfy the requirements of the notice and

cure provision.  Because it is clear that Ms. Roisland cannot allege that she satisfied the notice

and cure provision, amendment would be futile, and thus I dismiss with prejudice as to

Defendant Flagstar as well.[10]

## V.    Unlawful Business and Trade Practices

Ms. Roisland's second claim for relief is for violation of the Oregon Unfair Trade

Practices Act.  She alleges that Defendants "[m]isrepresent[ed] their authority to foreclose;" that

Defendants recorded an assignment of the deed of trust "containing false information;" that

Defendants "[assessed] improper and unauthorized fees or charges; [caused] confusion related to

the parties' relationships, rights, and services; and [misrepresented] information."  (Compl. [1-1]

¶ 13.)  Without more factual detail than these allegations provide, it is unclear exactly what acts

of Defendants are at issue in these allegations.  Consequently, the complaint fails to state a claim

---

[9] *See Williston on Contracts* § 74.10 (4th Ed.) (noting that all contract rights may be assigned in the absence of clear language expressly prohibiting the assignment).  In this case, the deed of trust clearly provides that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."  (Compl. [1-1] ¶ 20.)

[10] Defendant argues that all claims ought to be dismissed for failure to satisfy the notice and cure provision.  (Def.'s Mem. [12] at 6–8.)  While I expect that at least the first, third, fourth, and seventh claims would fall under the requirements of the notice and cure provisions, as claims "arising from the other party's actions pursuant to this Security Instrument," I decline to rule on that question because I have dismissed these claims on independent grounds.  The only claim I dismiss without prejudice is Ms. Roisland's UDCPA claim against Defendant Flagstar.  I am unable to determine, on the sparse allegations contained in this complaint, whether any UDCPA claim that Ms. Roisland may be able to allege would arise from "actions pursuant to this Security Instrument" (or otherwise fall within the provision's purview).  Defendant Flagstar is, however, free to argue that a failure to provide notice bars such a claim if Ms. Roisland chooses to reassert it.

under the UTPA on which relief can be granted.  At the very least I must dismiss this claim

without prejudice.

However, the UTPA did not cover loan transactions when Ms. Roisland took out the loan

and granted the deed of trust in 2009.  *See Lamm v. Amfac Mort. Corp.*, 44 Or. App. 203, 204,

605 P.2d 730, 730 (1980); *Haeger v. Johnson*, 25 Or. App. 131, 132, 548 P.2d 532, 534–35

(1976); *see also Hogan v. Nw. Tr. Servs*, No. 10-6028, 2010 WL 1872945 at *8 (D. Or. May 7,

2010).  The UTPA is inapplicable to a loan transaction that occurred prior to its amendment in

2010.  *See Mikityuk*, 2013 WL 3388536, at *2; *Hernandez v. BAC Home Loan Servicing, LP*,

No. 12-106, 2012 WL 1941745, at *3 (D. Or. May 23, 2012).  The UTPA was amended to

include "loans and extensions of credit," effective March 23, 2010.  Or. Rev. Stat. § 646.605(6),

as amended by Or. Laws. Spec. Sess. Ch. 94 § 1 (2010).  However sparse the factual allegations,

at least this much is clear: Ms. Roisland's UTPA claim arises from the loan she received and the

deed of trust she granted in 2009.  Ms. Roisland consequently cannot support a claim challenging

the enforcement of the deed of trust under the UTPA.  I dismiss her second claim against all

defendants with prejudice.

**VI.    Unfair Debt Collection Practices Act**

Ms. Roisland's sixth claim for relief is brought under the Oregon Unfair Debt Collection

Practices Act ("UDCPA"), Or. Rev. Stat. § 646.639.  Defendants argue that the claim must be

dismissed under the UDCPA's one-year statute of limitations.  Or. Rev Stat. § 646.638(6).

The complaint was filed in Multnomah County Court on November 27, 2012.  Oregon

law provides that an action is commenced on the date it is filed *only if* the defendant is served

within sixty days of filing.  Or. Rev. Stat. § 12.020(2).  Otherwise, the action is commenced

when the defendant is served.  Or. Rev. Stat. § 12.020(1).

The first Defendant to be served in this suit was Defendant MERS, and service occurred on March 8, 2013, well beyond the sixty day deadline that would allow the suit to be considered filed on November 27, 2012 for purposes of the statute of limitations. *See Torre v. Brickey*, 278 F.3d 917, 919 (9th Cir. 2002) (per curium). Consequently, Ms. Roisland cannot sustain a claim for violation of the UDCPA based on events occurring prior to March 8, 2012, the date on which the first defendant in this case was served. This bars any claim based on the assignment of the beneficial interest from Defendant MERS to Defendant Flagstar or Defendant Flagstar's appointment of Defendant Northwest as successor trustee, recorded on January 11, 2012. (Compl. [1-1] Ex. 2; Def.'s Mem. [12] Ex. B).

Although Ms. Roisland's allegations in support of this claim are impermissibly vague, her arguments in opposition to Defendants' motion to dismiss indicate that she intends to base her claim on events arising in connection with the trustee's sale and negotiations she alleges were occurring between herself and Defendant Flagstar prior to the date of the sale. (Pl.'s Resp. [21] at 6–7.) The trustee's sale occurred on May 18, 2012. (Compl. [1-1] Ex. 4.) Consequently, the statute of limitations would not necessarily bar a claim arising from events occurring between March 27, 2012 and May 18, 2012. [11]

The complaint as currently pled, however, is insufficient to satisfy federal pleading standards. The allegations specifically connected to Ms. Roisland's UDCPA claim are the kind

---

[11] Defendants point out that Or. Rev. Stat. § 12.020(1) provides that a claim is commenced "as to each defendant, when the complaint is filed, and the summons served on the defendant, or on a codefendant who is a joint contractor, or otherwise united in interest with the defendant." They thus argue that no claim within the statute of limitations can be asserted against those defendants that have not been served. Ms. Roisland points out that these defendants had actual notice from the time Defendant MERS was served and have appeared in this suit. I take Plaintiff's argument to be that the other Defendants are "joint contractors" or "united in interest" with Defendant MERS within the meaning of Or. Rev. Stat. § 12.020(1). The parties have not briefed Defendants' relationship to one another in terms of § 12.020(1). Without more from the parties, I decline to decide this question today. Because it is possible that they are "joint contractors" or "united in interest" with Defendant MERS by virtue of the deed of trust contract, I do not consider amendment futile by reason of the statute of limitations at this time.

of "threadbare recitals of the elements of a cause of action" that are insufficient under *Iqbal*, 556 U.S. at 678. The complaint is insufficient to give Defendants notice of the factual basis of the claims or to state a claim for relief "that is plausible on its face." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570); *see also Erickson*, 551 U.S. at 93–94.

I dismiss this claim without prejudice as to Defendant Flagstar. Because Ms. Roisland suggests that she intends to base the UDCPA claim on the alleged negotiations and the trustee's sale—events that occurred within the limitations period—Ms. Roisland may be able to state a claim on which relief could be granted. I caution that any amended complaint must state a claim for relief arising from events occurring within the limitations period and must satisfy federal pleading standards.

Defendant MERS, however, was not involved in these transactions, and consequently I dismiss the claim with prejudice as to it. Similarly, there is no indication that Defendant Freddie Mac, who purchased the property at the trustee's sale, was involved in the alleged negotiations. Moreover, Defendant Freddie Mac cannot be said to have been involved in any "debt collection activities" covered by the UDCPA. Consequently, I also dismiss the claim with prejudice as to Defendant Freddie Mac.

*//*

**CONCLUSION**

For the reasons explained above, I dismiss Ms. Roisland's first, second, third, fourth, fifth and seventh claims with prejudice as to all Defendants.    I dismiss Ms. Roisland's sixth claim with prejudice as to Defendants MERS and Freddie Mac and without prejudice as to Defendant Flagstar.

IT IS SO ORDERED.

DATED this __26__ day of November, 2013.

/s/Michael W. Mosman
_____
MICHAEL W. MOSMAN
United States District Judge